Argued and submitted May 14, affirmed June 16, 1993

Marge DAVENPORT,
*Respondent,*

*v.*

CITY OF TIGARD,
*Respondent below,*

*and*

TRIAD TIGARD LIMITED PARTNERSHIP
and Ross Woods,
*Petitioners.*

(LUBA No. 92-104; CA A79179)

854 P2d 483

Steven L. Pfeiffer, Portland, argued the cause for petitioners. With him on the brief were Michael R. Campbell and Stoel Rives Boley Jones & Grey, Portland.

Richard M. Whitman, Portland, argued the cause for respondent. With him on the brief was Ball, Janik & Novack, Portland.

Before Deits, Presiding Judge, and Riggs and Durham, Judges.

DEITS, P. J.

**DEITS, P. J.**

The City of Tigard granted petitioners' application for approval[1] of a 348-unit apartment development. Respondent[2] appealed the decision to LUBA, which remanded it to the city. Petitioners seek review, and we affirm.

We take the facts from LUBA's opinion:

"A prior request for approval of an apartment development on the subject property was denied by the city in 1990, due to traffic safety concerns related to the condition of the streets and intersections serving the subject property. Thereafter, following study of alternatives for street system improvements, amendments to the Tigard Comprehensive Plan (TCP) Transportation Map were proposed. These amendments changed the classifications of certain streets serving the subject property and designated new streets and street extensions.

"The above noted TCP Transportation Map amendments were adopted September 12, 1991.[1] The application that led to the decision challenged in this appeal was submitted to the city one day later on September 13, 1991. The city applied the TCP, as amended, and other relevant TCP and Tigard Community Development Code (TCDC) provisions and granted the approvals challenged in this appeal on April 28, 1992.

------

"[1] The decision adopting these TCP amendments was appealed to this Board, and the city's decision was remanded on January 28, 1992. *Davenport v. City of Tigard*, 22 Or LUBA 577 (1992). Those TCP amendments subsequently were modified and readopted by the city. That city decision was also appealed to this Board and was affirmed. *Davenport v. City of Tigard*, ____ Or LUBA ____ (LUBA No. 92-078, August 11, 1992) [*aff'd* 116 Or App 248, 839 P2d 773 (1992)]."[3]

ORS 227.178(3) provides that a city's approval or denial of a permit "application shall be based upon the

------

[1] The precise nature of the approval is disputed and is the subject of one of the assignments of error that petitioners make to us. That is a matter for the city to resolve on remand.

[2] We refer to the parties by their designations in this court.

[3] It is unnecessary to our analysis to explain the amendments in detail. Their general objective was to improve street and traffic capabilities in the vicinity of the proposed development.

standards and criteria that were applicable at the time the application was first submitted." Respondent argued to LUBA that the city erred by applying the amended version of the transportation map to petitioners' renewed application, reasoning that the amendment was not acknowledged or deemed acknowledged at the time of the application's resubmission, and the acknowledged unamended provisions therefore remained the applicable "standards and criteria."

LUBA agreed with respondent's position on this issue. It first concluded that the amendments contained approval "standards and criteria" within the meaning of ORS 227.178(3). It explained, in part, that "a number of the TCP and TCDC provisions that were applied by the city * * * and found to be satisfied either could not or would not have been applied in the way they were if the *unamended* (pre-September 12, 1991) TCP Transportation Map continued to apply." (Emphasis in original; footnote omitted.) LUBA then reasoned, on the basis of our opinion in *Von Lubken v. Hood River County*, 118 Or App 246, 846 P2d 1178, *rev den* 316 Or 529 (1993),

> "that comprehensive plan standards and criteria adopted or amended by postacknowledgment plan amendments do not apply to permit applications filed *after* such postacknowledgment plan amendments are adopted, but *before* those postacknowledgment plan amendments were deemed acknowledged. Under the court's decision in *Von Lubken*, it does not matter when an ordinance adopting amended plan provisions is final or legally effective. Rather, the critical date, for purposes of identifying potentially applicable standards and criteria in the comprehensive plan, is the date the amended plan standards and criteria are considered acknowledged, pursuant to ORS 197.625." (Emphasis in original; footnotes omitted.)[4]

LUBA added:

> "In a footnote, the court did state that it did 'not mean to imply there are no circumstances in which it would be permissible to apply local provisions before they are acknowledged.' *Von Lubken [v. Hood River County], supra*, 118 Or

---

[4] In *Von Lubken*, we construed ORS 215.428(3), which applies to county permit decisions and is otherwise materially identical to ORS 227.178(3).

App at 249 n 1. We are uncertain to what circumstances the court may be referring."[5]

LUBA concluded that, because the map amendments were not yet acknowledged at the time that petitioners filed their new application, the pre-existing acknowledged map remained applicable "until the newly adopted * * * amendment is itself deemed acknowledged." Therefore, "the city erred by applying the amended, but as yet unacknowledged, TCP Transportation Map provisions" to petitioners' application instead of the unamended provisions.

Petitioners' assignment does not challenge LUBA's conclusion that, if the amendments do entail approval standards or criteria, *Von Lubken* precludes their application to the proposed development.[6] Rather, petitioners contend in their first assignment to us that LUBA erred in concluding that the amended map contained "standards and criteria," within the meaning of ORS 227.178. They assert that the amendments contain no rules "for determining whether to approve or deny a development application" and, therefore, cannot constitute approval standards or criteria under the statute.

Respondent answers that the city did, in fact, apply the amendments as an approval standard or criterion. She

---

[5] Our comment was intended to refer to a situation where an amendment makes a change that does not significantly alter the substance or operation of the existing legislation. In such a case, *Von Lubken* would not make it inapplicable before acknowledgment.

[6] Our decision in *Von Lubken* concerned the applicability of an existing acknowledged approval standard in the county's plan that had been repealed by legislation that was not yet acknowledged. We held that, until the repealed legislation was acknowledged or deemed acknowledged, ORS 197.625, the pre-existing provision remained acknowledged and it remained applicable instead of the unacknowledged amendment. In the *Von Lubken* situation, that conclusion was logically compelled, because acknowledged legislation *must* be applied to a local government's land use decisions, and effect cannot simultaneously be given to two provisions, one of which was enacted to eliminate the other. This case, of course, concerns the other end of the spectrum — the applicability of a new provision that has not yet been acknowledged. However, we believe that the reasoning of *Von Lubken* supports the same conclusion regarding such legislation. If an amendment makes a substantive change in the way in which the unamended legislation operates, it would be inconsequential whether the inquiry focuses on the acknowledged status of the original legislation or on the unacknowledged status of the amendment. If they are inconsistent, the existing provision prevails until the change is acknowledged.

points to various parts of the city's order, including its conclusion that the city's one-year limit on the resubmission of a denied application was inapplicable here because, *inter alia*:

> "The Council agrees with the applicant that the current site plan with a public road through the development eliminating the need for variances to public road improvement standards is a substantial change from the previously denied site plan thereby constituting a substantial change in facts from the previously denied application. *In addition, the recently approved amendment to the Transportation Plan constitutes a change in City policy that may affect the outcome of the application.*" (Emphasis supplied.)

As did LUBA in a portion of its opinion that we have quoted, respondent also points to specific ways in which the city's decision applied or was contingent upon the amendments.

■       Respondent concludes:

> "The city's determination of what provisions of its comprehensive plan and land use regulations are applicable 'standards and criteria' for a particular application is the city's to make in the first instance, and must be upheld unless it is 'clearly wrong.' *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992); *Weeks v. City of Tillamook*, 117 Or App 449, 453-54, 844 P2d 914 (1992)."

That statement goes too far. "Standards and criteria" is a statutory term; its meaning is a question of state law, and a local interpretation or application of it does not bind us. *See Forster v. Polk County*, 115 Or App 475, 478, 839 P2d 241 (1992), and authorities there cited. Although the city may interpret its legislation, subject to the limited standard of review defined in *Clark*, neither its interpretation nor its legislation can be given effect if it is contrary to or necessitates the misapplication of a state statute. *See Ramsey v. City of Portland*, 115 Or App 20, 836 P2d 772 (1992). For example, a city could not circumvent ORS 227.178(3) by "interpreting" approval standards or criteria in its legislation as not being approval standards or criteria.[7] The statute is for LUBA and us, rather than the city, to interpret definitively.

_____

[7] The issue we discuss differs from the one in *Downtown Comm. Assoc. v. City of Portland*, 80 Or App 336, 722 P2d 1258, *rev den* 302 Or 86 (1986). The question there was solely whether language in a plan established an approval criterion or something less binding. That question could be answered solely by reference to the plan itself

■■ We conclude that the term "standards and criteria," as used in ORS 227.178(3) and ORS 215.428(3), is not limited to the provisions that may be characterized as "approval criteria" in a local comprehensive plan or land use regulation. *See* note 7, *supra*. The role that the terms play in the two statutes is to assure both proponents and opponents of an application that the substantive factors that are actually applied and that have a meaningful impact on the decision permitting or denying an application will remain constant throughout the proceedings. *See Sunburst II Homeowners Assn. v. City of West Linn*, 101 Or App 458, 790 P2d 1213, *rev den* 310 Or 243 (1990); *Kirpal Light Satsang v. Douglas County*, 96 Or App 207, 772 P2d 944, *on recon* 97 Or App 614, 776 P2d 1312, *rev den* 308 Or 382 (1989). That protective purpose of the statute would not be served by our adoption of the restrictive meaning that petitioners would give the term. The statutes do not refer only to the local provisions that the local government *must* apply in acting on an application; it also includes provisions, like the amendments here, that the government *does* apply and that have a meaningful impact on its decision.

■ Here, the city made a change in the decisive factors that it applied. It is apparent from the city's orders themselves that the new application would not have been approved but for the amendments. That is precisely what the city was not permitted to do under LUBA's unchallenged understanding of *Von Lubken v. Hood River County, supra*. We are not persuaded by petitioner's first assignment of error.

We have considered petitioners' remaining assignments and conclude, without discussion, that none of them demonstrates a basis for reversal.

Affirmed.

---

and, after *Clark*, would be a matter for local interpretation and limited LUBA and judicial review. It is a different situation, however, when a state statute, as well as the local plan and the local interpretation of it, apply to the local government's decision.