Argued and submitted March 30, and May 7, reversed and remanded June 17, petition for review denied December 1, 1998 (328 Or 115)

## David HOLLAND,
*Petitioner,*

*v.*

## CITY OF CANNON BEACH,
*Respondent.*

(LUBA No. 79-079; CA A100752)

962 P2d 701

*See also* 138 Or App 340, 908 P2d 838; 323 Or 148, 915 P2d 407; 153 Or App 176, 956 P2d 1039.

William C. Cox argued the cause and filed the brief for petitioner.

Daniel Kearns argued the cause for respondent. With him on the brief was Preston Gates & Ellis, LLP.

Before Riggs, Presiding Judge, and Landau and Wollheim, Judges.

RIGGS, P. J.

### RIGGS, P. J.

Petitioner Holland seeks review of LUBA's decision affirming the City of Cannon Beach's denial of his application for a subdivision. We reverse.

Petitioner filed his application in September 1994. The city's initial disposition was to deny the application on the ground that the proposed subdivision did not comply with various provisions of the city's comprehensive plan. Petitioner appealed the city's decision and, after the case made its way to LUBA, us, the Supreme Court and back to us, we instructed LUBA to remand the decision to the city on the ground that the plan provisions on which the city had relied were inapplicable. *Holland v. City of Cannon Beach*, 142 Or App 5, 920 P2d 562, *rev den* 324 Or 229 (1996). On remand, the city council again denied petitioner's application. Its order holds, *inter alia*, that the proposed subdivision does not comply with the slope and density requirements of section 16.04.220(A) of the subdivision design standards in the city's land use regulations. Petitioner argued to the city and LUBA, and now argues to us, that section 16.04.220(A) was not an applicable approval standard or criterion at the time he filed his application in 1994. Hence, ORS 227.178(3) precluded the city from basing its denial of the application on that section. ORS 227.178(3) requires, as material, that a city's

"approval or denial of [an] application shall be based upon the standards and criteria that were applicable at the time the application was first submitted."[1]

A review of the way in which the city has applied—and not applied—section 16.04.220(A) in recent years is essential to an understanding of petitioner's argument and our holding. On September 30, 1993, city attorney William R. Canessa wrote a letter opinion in response to questions from city manager John Williams. The letter describes

---

[1] The parties agree, as do we, that the statute relates to the approval standards and criteria that were in place at the time of the application in 1994, and that the proceedings on remand are a "continuation" of the initial proceedings on the application for purposes of the statute. ORS 227.178(3) relates only to city proceedings. ORS 215.428(3) contains a corresponding requirement for counties.

Williams' first question as being whether the "density standards found in Section 16.04.220(A) * * * were still applicable in light of" certain 1992 comprehensive plan amendments; Canessa responded that the plan amendments impliedly repealed section 16.04.220(A).

During the city's first consideration of petitioner's present application, the only thing of note that was said about the section and its applicability appears in the November 1994 staff report. It states that Canessa's letter had "concluded [that] this standard was no longer applicable[.]" The subject was not revisited by the planning commission or the city council, because their dispositions were based on the plan provisions that we later held to be inapplicable instead of ordinance provisions such as section 16.04.220(A). The city council's decision denying the application the first time was dated March 7, 1995.

Between the 1994 filing of petitioner's application and our July 3, 1996, opinion directing that the city's decision be remanded to it,[2] section 16.04.220(A) arose in two other contexts of which we are apprised. First, in May 1995, in a decision approving a subdivision proposed by a different applicant (The Chapman Point subdivision), the city council concluded that section 16.04.220(A) was "[n]ot applicable as per the September 30, 1993 letter" from Canessa to Williams. Second, in February 1996, the city council concluded that section 16.04.220(A) *was* applicable to a partition application by petitioner that concerned the same property but was separate from the application involved here. The council denied the partition application, *inter alia*, because it did not satisfy the substantive criteria of section 16.04.220(A).[3]

---

[2] The appellate judgment and LUBA's ensuing remand, of course, came after our opinion.

[3] LUBA affirmed the city's 1996 decision on the partition application through a memorandum opinion, ____ Or LUBA ____ (LUBA No. 96-060, October 21, 1996), which we in turn affirmed without opinion. 144 Or App 622, 938 P2d 364 (1996), *rev den* 324 Or 560 (1997). There is some suggestion in the city's brief that petitioner is attempting here to relitigate the issues that LUBA and we decided there. We disagree, among other reasons, because the overriding issue in this case is whether the city complied with the requirement of ORS 227.178(3) that it apply the same standards and criteria throughout its processing of the *1994 subdivision application.*

The city's proceedings following the remand of its denial of the present application culminated in an April 29, 1997, decision by the council, in which the application was again denied. Among the bases for the decision was that the proposed subdivision did not comply with section 16.04.220(A). The council's order notes petitioner's argument that it had held the section to be inapplicable in connection with the Chapman Point subdivision and that "the city has not been consistent in its application of Section 16.04.220." The order explains, however:

"The September 30, 1993 letter from Bill Canessa to John Williams concluded that the provisions of Section 16.04.220 had been impliedly repealed. It was not until its February 20, 1996 order denying the Holland minor partition request, that the council determined that adoption of Ordinance 92-11 did not impliedly repeal section 16.04.220(A) and that in fact it constituted a review criterion for partitions and subdivision applications. The latter council interpretation is adopted by this council in this order."

Petitioner contends that, against that historical background and under ORS 227.178(3), section 16.04.220(A) was not a standard or criterion that was applicable to his 1994 application at the time he filed it. He asserts, generally and through a variety of particular theories, that the city had treated section 16.04.220(A) as inapplicable when he submitted his application and on relevant occasions thereafter, and that the city's later use of the provision as a basis for denying his application therefore violated ORS 227.178(3).

LUBA rejected petitioner's argument. It reasoned, first, that the city had made no express and authoritative determination that section 16.04.220(A) was *not* an applicable approval standard or criterion at any time in direct connection with the processing of this application. LUBA explained:

"We disagree that the initia꜋[1994] staff interpretation in this case was sufficient to e꜋tablish that SDS [section] 16.04.220(A) is not an applicab꜋e criterion for purposes of ORS 227.178(3). The staff interp꜋retation was not the basis for the council's [first] denial. P꜋titioner does not cite any authority for the proposition tha꜋ the staff interpretation or the city attorney's 1993 interpr꜋tation is binding on the

city. For purposes of ORS 227.178, the city identified SDS 16.04.220(A) as an approval criterion at the time the application was filed,[4] and during the course of proceedings on this application the council never *expressly* determined that SDS 16.04.220(A) is not an applicable approval criterion." (Emphasis in original.)

LUBA then turned to and rejected other permutations of petitioner's argument. LUBA stated:

"Nonetheless, petitioner argues that in the subsequent Chapman Point decision the council adopted without any discussion the city attorney's interpretation that SDS 16.04.220(A) had been impliedly repealed. We understand petitioner to contend that the lack of discussion or explicit interpretation demonstrates that that interpretation was *implicitly* in effect prior to the Chapman Point approval, and thus was in effect in September, 1994 when petitioner asserts that ORS 227.178(3) binds the city to that interpretation.[5]

"However, even if petitioner's first proposition is correct, that the city could implicitly adopt an interpretation, and that the Chapman Point approval demonstrates the council had so implicitly adopted the city attorney's interpretation, we disagree with petitioner's second proposition that ORS 227.178(3) binds the city to that interpretation.

"As a general matter, local governments may interpret their ordinances to determine which provisions constitute approval criteria, and we accord that interpretation significant deference. Local governments may also change existing interpretations in the course of ongoing proceedings.

"* * * * *

---

[1] LUBA's statement that the section was identified as a criterion is based on the fact that the city's hearing notices "listed as approval criteria the city's subdivision design standards * * * 16.04.150 through 16.04.230." Section 16.04.220(A) was not mentioned specifically, and was "listed" only in the sense that it falls numerically between the two sections that were mentioned. As discussed in the text, the city's first specific mention of section 16.04.220(A) in connection with petitioner's subdivision application appears in the November 1994 staff report, which states simply that Canessa's letter had concluded that the section is not applicable.

[5] LUBA's use of terms such as "without any discussion" could cause confusion. The city council's Chapman Point order *states* that section 16.04.220(A) is inapplicable "as per" Canessa's 1993 letter to Williams. It is correct that the council's order says little. It nevertheless expressly adopts Canessa's position. *See Derry v. Douglas County*, 132 Or App 386, 888 P2d 588 (1995).

"Thus, even if the interpretation that SDS 16.04.220(A) had been impliedly repealed was 'in effect' in September 1994, the council is not constrained from changing that interpretation if it determines it to be incorrect." (Emphasis in original; citations and footnote omitted.)

LUBA next discussed *Davenport v. City of Tigard*, 121 Or App 135, 854 P2d 483 (1993), in which we interpreted ORS 227.178(3) and on which petitioner relies. LUBA rejected petitioner's contention that *Davenport* "compels a contrary conclusion" to the ones we have quoted from its opinion. Consequently, LUBA held that ORS 227.178(3) did not preclude the city from applying "its new interpretation in the present case during the proceedings on remand." LUBA also held that the city's "new interpretation," *i.e.*, that section 16.04.220(A) had not been impliedly repealed and was therefore applicable, was "reasonable and correct" on its merits.[6]

In his argument to us, petitioner essentially reasserts the general and specific contentions that he made to LUBA and that it rejected.[7] The city responds, *inter alia*, that the council's determination that section 16.04.220(A) was an applicable approval standard, and that it had not been impliedly repealed by other city enactments, is a local interpretation of local land use legislation. Consequently, the city argues, its governing body's interpretation is subject to the deferential review standard of ORS 197.829(1)(a)-(c) and *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992), and is not reversible under that standard.

We disagree with the city's argument and with some of LUBA's analysis. In *Friends of Bryant Woods Park v. City of Lake Oswego*, 126 Or App 205, 868 P2d 24 (1994), and *Alexanderson v. Clackamas County*, 126 Or App 549, 869 P2d 873, *rev den* 319 Or 150 (1994), arguments were presented to us that, notwithstanding the deferential review standard of

_____

[6] In a footnote, LUBA observed that, if a city changes its interpretation of relevant local legislation during the course of its proceedings on an application, it must afford the parties a reasonable opportunity to present arguments and evidence that are responsive to the new interpretation.

[7] We do not address all of petitioner's specific contentions, nor do we discuss all of the city's arguments.

ORS 197.829 and *Clark*, inconsistent or arbitrary local interpretations, which result in unjustified selective or conflicting applications of local provisions to different applicants, should be treated as reversible *per se*. We found it unnecessary to resolve that question in either case because, contrary to the proponents' assertions, there was no basis for concluding that the local governments there had engaged in decisionmaking practices of the kind described.

This case differs. From the time of the city attorney's letter the year before petitioner filed his application through the time of the city council's Chapman Point decision the year after he applied, every person and body that had addressed the question at every level of the city government were uniform in the view that section 16.04.220(A) was inapplicable as an approval standard and, indeed, that it no longer existed. That view was reiterated in the planning staff's report on the present application. We might agree with LUBA that, ORS 227.178(3) notwithstanding, the city council was not "bound" by either the city attorney's or the staff's position on the applicability of the provision, if what was involved here was simply a single application that was making its way through the various advisory and dispositional stages of the city's process. *See Alexanderson*. However, the city council's Chapman Point decision was made after the staff report on the present application was prepared, and the former as well as the latter adopted the city attorney's view that section 16.04.022(A) had been impliedly repealed and, therefore, was categorically inapplicable to *any* application.[8]

■   Under ORS 197.829(1)(a)-(c) and *Clark* and its judicial progeny, LUBA and this court are required to affirm a local governing body's interpretation of local land use legislation unless the interpretation is so "clearly wrong" as to be beyond reasonable acceptance. *See, e.g., Huntzicker v. Washington County,* 141 Or App 257, 261, 917 P2d 1051, *rev den* 324 Or 322 (1996). We have recognized—and it is somewhat

---

[8] It is true that the city council departed from that view on one previous occasion before doing so in the present case. As noted, however, that previous departure also involved an application by this petitioner. More to the point, it occurred in February 1996, after the events described in the text and substantially after petitioner filed his present application.

self-evident—that there can be tenable alternative interpretations that differ from one another by 180 degrees, *either* one of which would be equally affirmable under that standard. However, what we have not recognized, and what we implicitly questioned in *Alexanderson* and *Friends of Bryant Woods Park*, is that local governments may apply *both* such interpretations interchangeably on different occasions and still obtain LUBA's and the courts' deferential review of either or both variations.

■ It is unnecessary to resolve that question in its full breadth in this case because the *Clark* standard is not determinative here in any event. We explained in *Davenport*:

" 'Standards and criteria' is a statutory term; its meaning is a question of state law, and a local interpretation or application of it does not bind us. *See Forster v. Polk County,* 115 Or App 475, 478, 839 P2d 241 (1992), and authorities there cited. Although the city may interpret its legislation, subject to the limited standard of review defined in *Clark*, neither its interpretation nor its legislation can be given effect if it is contrary to or necessitates the misapplication of a state statute. *See Ramsey v. City of Portland,* 115 Or App 20, 836 P2d 772 (1992). For example, a city could not circumvent ORS 227.178(3) by 'interpreting' approval standards or criteria in its legislation as not being approval standards or criteria." 121 Or App at 140 (footnote omitted).

We also said in *Davenport* that the purpose of ORS 227.178(3)

"is to assure both proponents and opponents of an application that the substantive factors that are actually applied and that have a meaningful impact on the decision permitting or denying an application will remain constant throughout the proceedings." 121 Or App at 141 (citation omitted).

We conclude that, under the facts of this case, section 16.04.220(A) was not an applicable approval standard or criterion, within the meaning of the statute, at the time the application was first submitted. It was treated as inapplicable in the staff report, and that view was confirmed by the city council in its subsequent decision on the Chapman Point subdivision application. Although that application was, of course, a different one from this one, the two applications are

indistinguishable for purposes of the question at hand—at least given the rationale for the city council's answer in the Chapman Point decision. If section 16.04.220(A) was impliedly repealed and a nullity for all purposes, it was as much so for purposes of this application as for the Chapman Point subdivision. The city had treated section 16.04.220(A) as inapplicable before, during and after petitioner's filing of his present application, and it was required by ORS 227.178(3) to assure that the standards and criteria would "remain constant throughout the proceedings" on the application. It is immaterial that the city council did not put its imprimatur on the interpretation that the section was inapplicable until after this application was filed or that it did so in a proceeding on a different application. Its Chapman Point decision served as a ratification by the highest city body of what other city officials had said generally and of what the staff report had said in connection with this application particularly.

We do not categorically foreclose the possibility that, as LUBA concluded, there may be circumstances under which a city governing body may appropriately change a previous interpretation as to whether a particular provision is an approval standard during its proceedings on a particular application. However, no such circumstance was shown to be present here. The only explanation in the city council's present order for its departure from the Chapman Point interpretation is that it had also departed from that interpretation in denying petitioner's intervening partition application. We accept, at least as an abstract proposition, the premise that a local government may "correct" its earlier interpretations of its legislation. However, where ORS 227.178(3) applies, its emphasis is on consistency, not correctness.

We conclude that LUBA erred insofar as it held that the city's decision was affirmable on the basis of section 16.04.220(A). Because LUBA based its disposition on that ground, it did not reach a number of other issues that might serve as independent bases for affirming the city's decision. We remand for it to consider those issues.

Reversed and remanded.