Argued and submitted August 20, affirmed November 18, 2020

Mitchell JONES,
Harold K. Lonsdale,
and Clackamas County,
*Respondents,*

*v.*

WILLAMETTE UNITED FOOTBALL CLUB,
*Petitioner.*

Land Use Board of Appeals
2019135; A174182

479 P3d 326

In a land use action, the Land Use Board of Appeals (LUBA) reversed and remanded a Clackamas County hearings officer's decision approving an application by a soccer club for a conditional use permit to develop and operate a proposed sports facility. LUBA concluded that the hearings officer erred when he approved the conditional use permit without first determining for himself that the proposed facility was a conditionally permitted use within the location's zoning. He believed that he was bound, due to local ordinance, to a prior determination by the county's planning director that the proposed use was similar to an expressly listed conditional use. On review, the soccer club contends that the hearings officer properly treated as binding a prior determination by the county planning director. *Held*: LUBA's order was not unlawful in substance. LUBA's decision did not represent a collateral attack on the earlier similar use determination of the planning director; the planning director's determination was not a "standard and criterion," nor fixed "goal-post," that the hearings officer must follow; and LUBA's decision did not preclude the hearings officer from giving the opinion of the planning director whatever consideration is due in reaching an independent decision on the conditional use permit.

Affirmed.

Anna M. Joyce argued the cause for petitioner. Also on the brief were Paul S. Bierly and Markowitz Herbold P.C.

Carrie A. Richter argued the cause for respondents Mitchell Jones and Harold K. Lonsdale. Also on the brief was Bateman Seidel Miner Blomgren Chellis & Gram, P.C.

No appearance for respondent Clackamas County.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

DeVORE, P. J.

Affirmed.

**DeVORE, P. J.**

In this case, we review a final order of the Land Use Board of Appeals (LUBA). The order remanded a Clackamas County hearings officer's decision approving an application for a conditional use permit for the Willamette United Football Club (Willamette United). LUBA concluded that the hearings officer erred when he approved the conditional use permit without first determining for himself that Willamette United's proposed sports facility was a conditionally permitted use within the location's zoning. Willamette United contends that the hearings officer properly treated as binding a prior interpretation by the county planning director that the proposed sports facility would be a use that is "similar" to a recreational use—a use that is expressly permitted. Willamette United urges a number of reasons why the planning director's prior interpretation should be binding on the subsequent, conditional use decision. We review those reasons and, ultimately, conclude that LUBA is correct. We affirm.

## I. PARALLEL PROCEEDINGS

We take the facts from LUBA's opinion and the decision of the hearings officer. Willamette United seeks to develop a sports facility on Borland Road on a 24-acre property that is zoned Rural Residential Farm Forest 5-Acre (RRFF-5). The proposed facility includes

> "three outdoor artificial turf sports fields, an indoor turf training field, an operational building containing a group training room, a concessions area, restrooms, equipment storage, and staff offices. Other park facilities would include parking, an outdoor sports court, picnic area, barbeque area, playground, walking and jogging [trails], an ecological observation station, runoff water retention ponds, and a septic [field]."

(Brackets in LUBA opinion.)

In 2017, Willamette United sought an interpretation of the Clackamas County Zoning and Development Ordinance (ZDO) to determine whether the proposed facilities are conditionally allowed uses as uses similar to

conditionally allowed "Recreational Uses."[1] We will refer to that process as the "similar use determination."[2] It was allowed and limited by a provision of the ZDO, which stated:

> "The Planning Director has the authority to interpret the Comprehensive Plan and this Ordinance and their applicability to specific properties, except where such authority is specifically granted by this Ordinance to the Hearings Officer, or to the Planning Commission or Board of County Commissioners on appeal."

ZDO 1308.01. That general ZDO provision did not indicate whether an interpretation would be deemed to be influential advice or a binding authorization with regard to any proceedings when a permit application might later be considered by a hearings officer, the planning commission, or the board of commissioners. A related ZDO provision at that time made reference to such later proceedings, stating:

> "If a use is found to be similar to a primary, accessory, limited, or conditional use, it shall be subject to the same approval criteria, review process, dimensional standards, and development standards as the use to which it is found to be most similar."

ZDO 106.02(E) (2016).[3] Again, that provision did not explicitly indicate whether the planning director's similar use determination would necessarily predetermine that issue when subsequent approval or review proceedings ensued before decision-making bodies.

In December 2017, the planning director issued his similar use determination. In it, the planning director concluded that Willamette United's proposed uses are similar uses to recreational uses and are conditionally allowed on any property zoned RRFF-5. As it happened, two property owners who own property within 500 feet of the site, Jones

---

[1] ZDO Table 316-1 lists the uses permitted in the RRFF-5 zone, which includes "recreational uses."

[2] The determination has been variously termed an interpretation or an authorization. For example, ZDO 106.02(A) (2016) provided, "Authorization of a similar use is a type of interpretation application processed pursuant to Section 1308, *Interpretation*."

[3] As part of amendments to the ZDO in 2018, the language in ZDO 106.02(E) was moved to ZDO 106.01(C) and revised, but not in a material way that affects our analysis.

and Lonsdale, had not received notice of the similar use proceeding.

In May 2018, the county commissioners amended the ZDO to add a new provision, ZDO 106.01(B), stating:

> "An authorization of a similar use is not a site-specific application, but rather it is a use-specific application. The decision on an application for authorization of a similar use is applicable to all land in the zoning district for which the request was made and is applicable only to the use described in the application."

As later explained, that new provision would become a focus of arguments in this case, as a purported indication of the binding effect of a similar use determination.

In April 2019, Willamette United applied for a conditional use permit to develop and operate its sports facility on the site. Jones and Lonsdale received notice of the conditional use permit application and, as a consequence, learned of the earlier, similar use determination made by the planning director. Jones and Lonsdale challenged the similar use determination in an appeal to LUBA. That appeal, however, was not decided at the time of the hearings officer's decision on the conditional use permit in this case.[4]

In the meantime, the county's hearings officer approved the conditional use permit. In his order, he framed the issue raised by the parties. He explained that ZDO "1203.03 provides the approval criteria for conditional uses" and that the criterion in "ZDO 1203.03(A) requires that the proposed use be listed as a conditional use in the zoning district in which the property is located." He recognized that, in 2017, Willamette United had obtained a similar use determination from the planning director, who determined that the proposed uses are similar to recreational uses and may be allowable conditional uses in the RRFF-5 zone. That

_____

[4] In a separate decision issued on the same date as the final order on review here, LUBA remanded the 2017 similar use determination because the county had committed a procedural error in failing to provide notice to Jones and Lonsdale of Willamette United's application as required under the ZDO. *Jones v. Clackamas County*, ___ Or LUBA ___ (LUBA No 2019-063, June 8, 2020). LUBA's decision in this case does not rest on the invalidation of the similar use determination for lack of notice. It rests on independent grounds that we review.

presented the issue of the effect, if any, of the planning director's similar use determination in the conditional use proceeding. The hearings officer responded:

"The parties devote substantial argument to the effect of the [similar use determination] on this case. [Jones and Lonsdale] devote extensive arguments to why issue preclusion does not apply to the Planning Director's decision. Similarly, [Willamette United] devotes extensive arguments as to why the Planning Director's decision cannot be collaterally attacked. Finally, the parties devote extensive argument as to whether the Planning Director's decision was correct.

"I tend to agree with [Jones and Lonsdale] that issue preclusion *alone* would not bar me considering whether the proposed uses are similar uses to recreations uses. I also tend to agree with [Willamette United] that the Planning Director's decision cannot be collaterally attacked in this proceeding. I also do not think [Jones and Lonsdale] are trying to collaterally attack the Planning Director's decision or that [Willamette United] is claiming issue preclusion. Finally*, I am not going to consider whether the Planning Director's decision was correct.* While that decision could have been appealed to me during the County appeal period, the decision is now before LUBA and it is for LUBA to decide the merits. The question as I see it, is whether the Planning Director's decision is *binding on me under the ZDO.*

"\*\*\*\*\*

"[Willamette United] argues that the [similar use determination] is binding pursuant to ZDO 106.01(B) because the Planning Director's decision 'is applicable to all land in the zoning district for which the request was made \*\*\*.' \*\*\* [Willamette United] argues that the Planning Director's decision essentially amended the ZDO to now include the proposed uses as similar uses to 'recreational uses.' Just as I could not overrule the ZDO to say that 'recreational uses' are not allowed in the RRFF-5 zone, I similarly cannot overrule the *essentially amended ZDO* to say that the proposed uses are not similar useto 'recreational uses.'"

(Footnote omitted; emphases added.) The hearings officer continued by explaining that:

"While I admit it seems somewhat odd that the ZDO could essentially be amended this way (and [Jones and Lonsdale] make a number of persuasive policy arguments against such a method), the ZDO certainly seems to be set up to allow such authorizations of similar uses to be binding on any subsequent applications for such uses in the corresponding zone.

"[Willamette United] is proceeding solely on the basis of the [similar use determination] to establish that the proposed use is allowed as a conditional use in the RRFF-5 zone. [Willamette United] specifically argued that I should not independently consider whether the proposed use is allowed as a conditional use in the RRFF-5 zone. Therefore, *I do not consider that issue. Based on the [similar use determination],* the proposed use is listed as a conditional use in the zoning district in which the subject property is located."

(Footnote omitted; emphasis added.) Without making a determination himself, the hearings officer accepted the planning director's interpretation that the proposed use was a similar use and thus a conditionally permitted use in the RRFF-5 zone. Finding that the other applicable criteria were satisfied, the hearings officer approved the application for a conditional use permit.

Jones and Lonsdale appealed that decision to LUBA, and, in the order we consider here, LUBA reversed and remanded the county's decision. LUBA held that the hearings officer improperly construed the applicable law when ruling that he could not make an independent determination whether the proposed sports facility is a use allowed in the RRFF-5 zone as a similar use. LUBA determined that the hearings officer misconstrued the scope, effect, and meaning of ZDO 106.01(B) as making the planning director's similar use determination preclusive or binding in the conditional use permit proceeding. LUBA expressed its reasoning in two related ways.

First, in LUBA's view, the hearings officer erred in understanding the effect or scope of the planning director's interpretation when making a similar use determination. LUBA explained:

"The hearings officer erred in relying on [ZDO] 106.01(B) (2018) to conclude that the Similar Use Determination

'essentially amended' the [ZDO]. *** [ZDO] 106.01(B) (2018) was not in effect in 2017 when the planning director made the Similar Use Determination, and the hearings officer erred in relying on that new [ZDO] provision to conclude that the Similar Use Determination applied county-wide to all land in the RRFF-5 zoning district, and 'essentially amended' the [ZDO]. *** [ZDO] 106.01(B) (2018) cannot be used as a tool to recast the 2017 Similar Use Decision into a decision of county-wide applicability."

With that, LUBA indicated that the 2018 amendment, ZDO 106.01(B) (2018), could not recharacterize the significance of an earlier similar use determination after the fact, nor could the similar use determination accomplish a *de facto* amendment of the ZDO on a county-wide basis.

Second, LUBA determined that the similar use determination—a planning director's interpretation—could not be binding on the hearings officer in the conditional use process, because the director's interpretation was not an applicable standard or criterion set forth in local ordinance as required by state statute. That statute, ORS 215.416(8)(a), states:

"Approval or denial of a permit application shall be based on standards and criteria which shall be set forth in the zoning ordinance or other appropriate ordinance or regulation of the county and which shall relate approval or denial of a permit application to the zoning ordinance and comprehensive plan for the area in which the proposed use of land would occur and to the zoning ordinance and comprehensive plan for the county as a whole."

In essence, LUBA explained, the planning director's similar use determination "is an interpretation of a criterion. It is not the criterion."

## II. ISSUES ON REVIEW

A. *Overview*

On review before this court, Willamette United contends that LUBA, not the hearings officer, mistakenly interpreted the applicable law. Willamette United asserts four reasons why LUBA erred: (1) that LUBA permitted a collateral attack on the similar use determination; (2) that LUBA

erred when concluding that the similar use determination was not a "standard and criterion" for the hearings officer to follow; (3) that, contrary to LUBA's decision, the similar use determination and ZDO 106.01(B) (2018) together are the rules in effect at the time of Willamette United's application, serving as fixed "goal posts" for issuance of the conditional use permit; and (4) LUBA erred when seeming to prevent the hearings officer's consideration of the similar use determination. We consider the arguments, each in turn.

We will reverse a LUBA order if we determine "[t]he order to be unlawful in substance." ORS 197.850(9)(a). That is, we assess whether LUBA's decision "represented a mistaken interpretation of the applicable law." *Mountain West Investment Corp. v. City of Silverton*, 175 Or App 556, 559, 30 P3d 420 (2001).

B.  *Collateral Attack?*

Willamette United first asserts that LUBA's decision impermissibly allows Jones and Lonsdale to collaterally attack the validity of the 2017 similar use determination in this proceeding. It argues that the similar use determination is a "prior final decision" that cannot be attacked in a subsequent phase of the approval process. Willamette United acknowledges that Jones and Lonsdale did not receive notice of the 2017 similar use proceedings, but it asserts that the lack of notice has no bearing on the validity of the conditional use permit obtained in 2019.

Jones and Lonsdale respond that they and LUBA have not collaterally attacked the similar use determination in this proceeding by challenging whether it was rightly decided or contending that it was improperly decided due to inadequate notice. Jones and Lonsdale note that the similar use determination is not the decision that is before us on review and that separate determination was the subject of a another appeal to LUBA, *Jones v. Clackamas County*, ___ Or LUBA ___ (LUBA No 2019-063, June 8, 2020). Jones and Lonsdale add that, to the extent that Willamette United is asserting here that any procedural defect in the 2017 similar use determination does not compromise that determination

in this conditional use proceeding, Willamette United's argument is misdirected because LUBA did not hold in this case that the notice defect in that case was the basis for remanding the county's conditional use permit decision. Rather, the issue here is the separate question whether the hearings officer erred by treating the similar use determination as preclusive in this conditional use permit proceeding.

On that point, we agree with Jones and Lonsdale. Willamette United's argument about collateral attack is inapt, and their argument about notice is misdirected. Seen properly, LUBA's opinion focused on what effect the 2017 similar use determination could have in the 2019 conditional use proceeding. The issue in this case is whether the similar use determination "essentially amended" the ZDO, was itself a standard or criterion, or was otherwise binding on the hearings officer considering the conditional use permit. LUBA concluded that the planning director's interpretation did not amend the ZDO, was not a standard or criterion, and was not otherwise binding on the hearings officer. Given those conclusions in this case, LUBA did not make any determination about whether the similar use determination itself was correct and did not rely on the notice defect in the other proceeding as a basis for its remand in this proceeding. LUBA's rationale was not a collateral challenge to the similar use determination. Instead, LUBA's rationale addressed what impact the director's prior interpretation should have. LUBA did not entertain a collateral attack on the similar use determination.[5]

## C.  *Standards and Goal Posts*

We address Willamette United's second and third arguments together, because they are closely related. They proceed from a common premise that rejects LUBA's conclusion that the planning director's similar use determination cannot be a "standard and criterion" within the meaning

---

[5] Although our role is not to evaluate the hearings officer's decision, we note that he, too, stated that he did not believe that Jones and Lonsdale were making a collateral attack on the similar use determination. He did not review whether the planning director's decision was correct; he only made a determination about whether that decision was binding on him.

of ORS 215.416(8)(a). That statute, quoted above, requires that a decision on a permit application be based on "standards and criteria which shall be set forth in the zoning ordinance or other appropriate ordinance or regulation of the county." Contrary to LUBA, Willamette United argues that the similar use determination *should* be a "standard" or "criterion."

Assuming that to be true, Willamette United next relies on ORS 215.427(3), which is known as the "goal-post rule." In relevant part, ORS 215.427(3)(a) states:

> "If the application [for a permit, limited land use decision or zone change] was complete when first submitted or the applicant submits additional information \*\*\* within 180 days of the date the application was first submitted and the county has a comprehensive plan and land use regulations acknowledged under ORS 197.251, approval or denial of the application shall be based upon the standards and criteria that were applicable at the time the application was first submitted."

That statute "provides, in essence, that the rules in existence when an application is complete are the rules that govern the approval or rejection of the application—government, in other words, cannot 'move the goal-posts' after the applicant has (to complete the sports metaphor) kicked the ball." *Setniker v. Polk County*, 244 Or App 618, 624, 260 P3d 800, *rev den*, 351 Or 216 (2011). Willamette United argues that the hearings officer was required under the goal-post rule, ORS 215.427(3), to consider the ordinances in existence at that time, including the quasijudicial interpretations of those ordinances, and that the hearings officer complied with ORS 215.427(3) by basing his decision on the similar use determination, along with applicable ordinances. Among applicable ordinances was ZDO 106.01(B) (2018), and, according to Willamette United, it requires adhering to the similar use determination.

Jones and Lonsdale respond that LUBA correctly decided that the similar use determination was not a standard or criterion under ORS 215.416(8)(a). They argue that, because the similar use determination was not a standard or criterion under ORS 215.416(8)(a), it was not a standard

under the goal-post statute either.[6] They insist that a planning director's interpretation of the ZDO, which has not been "ratified" by the Board of Commissioners, cannot be a "standard and criteria." In addition, Jones and Lonsdale contend that ZDO 106.01(B) (2018) did not make the earlier, similar use determination binding on the hearings officer.

Willamette United assails LUBA's conclusion that the similar use determination is not a "standard" or "criterion" set forth in the [ZDO] by relying on two cases: *Davenport v. City of Tigard*, 121 Or App 135, 854 P2d 483 (1993) and *Holland v. City of Cannon Beach*, 154 Or App 450, 962 P2d 701, *rev den*, 328 Or 115 (1998). Reliance on those cases is misplaced.

In *Davenport*, we observed that the term—standards and criteria—has a protective purpose:

"The role that the terms play in the two statutes[7] is to assure both proponents and opponents of an application that the substantive factors that are actually applied and that have a meaningful impact on the decision permitting or denying an application will remain constant throughout the proceedings."

*Id*. at 141. Willamette United relies on our subsequent statement that "standards and criteria" does "not refer only to the local provisions that the local government *must* apply in acting on an application; it also includes provisions \* \* \* that the government *does* apply and that have a meaningful impact on its decision." *Id*. (emphases in original). Willamette United contends that construing "standards and criteria" in ORS 215.427(3)(a) should include a planning director's interpretation, like the similar use determination here. Willamette United contends that that interpretation is an application of a provision.

Willamette United fails to appreciate the nature of the provisions at issue in *Davenport*. In that case, the

------

[6] Willamette United does not develop an argument that there is a difference in the meaning of "standards and criteria" under the two statutes, and we assume for purposes of this opinion that the meaning is the same.

[7] The two statutes referred to were the "goal post" statutes in ORS chapter 227, which applied to city permit decisions, and a materially identical statute in ORS chapter 215, which applied to county permit decisions.

provisions in question as "standards and criteria" concerned formal amendments to the Tigard Comprehensive Plan Transportation Map, not an administrative interpretation of them. The petitioners there argued that the plan's amendments could not constitute "standards and criteria" because they did not also contain "rules 'for determining whether to approve or deny a development application.'" *Id.* at 139. The amendments designated new streets and street extensions and changed the classification of some streets around the subject property. *Id.* at 137. We concluded that "standards and criteria" is "not limited to the provisions that may be characterized as 'approval criteria' in a local comprehensive plan or land use regulation." *Id.* at 141. Because the government did apply them as criteria, they qualified as such independently of whether they were categorized that way. *Id.* The criteria in question in that case were part of the city's comprehensive plan. By contrast, here the planning director's similar use determination is not contained in the ZDO, the comprehensive plan, or any amendments of them. Rather, it is an interpretation by one person—a county planning director.

In *Holland*, we reviewed a LUBA decision that involved whether a section of the city's subdivision design standards in its land use regulations was in effect at the time of the developer's subdivision application. Sometime earlier, the city attorney had given a letter opinion to the city manager that those design standards were impliedly repealed by certain amendments that the city council had made to the comprehensive plan. Thereafter, the city council had effectively adopted that interpretation in a prior subdivision decision. We concluded that the city council's decision on a previous subdivision application "served as a ratification by the highest city body of what other city officials had said generally and of what the staff report had said in connection with this application particularly." 154 Or App at 459. We concluded that the city council's treatment of the design standards—as repealed—represented the state of the "standard and criteria" to be applied.[8]

---

[8] We also noted that, "as an abstract proposition" we accepted the premise that a local government may "correct" its earlier interpretation of legislation, but where the goal-post statute applies, its emphasis is on consistency and therefore that was the basis for our ruling given the circumstances there. *Holland*, 154 Or App at 459.

Although *Holland* is similar to the present case insofar as it began with a staff interpretation of standards, that case is dissimilar in that it involved the ratification of the status of which standards were in effect as determined by the city council—the local government's policy-making body. The case did not turn on just one employee's interpretation of the meaning of a standard.

We are not persuaded that *Davenport* or *Holland* supports Willamette United's contention that the similar use determination here qualifies as a "standard and criteria." In plain terms, ORS 215.416(8)(a) requires that a decision on a permit application be based on "standards and criteria which shall be set forth in the zoning ordinance or other appropriate ordinance or regulation of the county." The planning director's interpretation was not something set forth in the zoning ordinance or other appropriate ordinance or regulation of the county. Therefore, we agree with LUBA's conclusion that the planning director's similar use determination was only an interpretation of a criterion and not a criterion itself.

The adoption of ZDO 106.01(B) (2018), after the planning director's determination, does not change that conclusion. Willamette United argues, however, that, under ORS 215.427(3), the hearings officer was required to apply the ZDO that was in effect when the conditional use permit application was filed. Willamette United argues that, because ZDO 106.01(B) (2018) was in effect in 2019 when it applied for a conditional use permit, the goal-post rule required that ZDO 106.01(B) (2018) be applied as part of the conditional use analysis. Because that should be so, argues Willamette United, then ZDO 106.01(B) (2018) should make the similar use determination binding on the hearings officer in the conditional use proceeding, just as he determined.

The problems with that argument are compound: It makes a debatable interpretation of ZDO 106.01(B) (2018) and assumes that interpretation compels a result that would be permissible. The first problem is apparent; the second is dispositive.

First, nothing in the terms of ZDO 106.01(B) (2018) addresses whether the planning director's interpretation

is binding on subsequent proceedings before deliberative bodies. It only provides that a similar use determination is use specific, not property specific and that the determination as to a particular developer's proposed use is applicable to all land in the zoning district. That provision is followed by ZDO 106.01(C) (2018) (previously contained in ZDO 106.02(E) (2016) as quoted above), which adds that, if a similar use determination is made, the proposed use shall be subject to the same approval criteria and review process as the use to which it is similar. In parallel fashion, ZDO 1308.01 grants authority for the planning director to offer interpretations of the ZDO or comprehensive plan, except where such authority is granted to a hearings officer, the planning commission, or the board of commissioners. Those provisions could be construed to reserve judgment to the decision-making bodies, while allowing the planning director's interpretation to be considered as worthy but advisory. That we do not decide. It suffices to say that, at best, ZDO 106.01(B) (2018) begs the question whether it is intended to preclude the normal review process so as to predetermine that a use is similar to a conditional use permitted in the zoning district.

Second, even if ZDO 106.01(B) (2018) were construed to provide that an earlier similar use determination were preclusive as to the later question whether a conditional use is permitted in the zoning district, that prospect does not permit the similar use determination to escape the requirement of ORS 215.416(8)(a) that the land use permit decision must be based on "standards and criteria which shall be set forth in the zoning ordinance or other appropriate ordinance or regulation of the county." The local ordinance, ZDO 106.01(B) (2018), cannot serve as a blank check to legitimize an interpretation of a planning director that itself is not a part of the zoning ordinance or other similar regulations. *Cf. Nicklaus v. Goodspeed*, 56 Or 184, 187-88, 108 P 135 (1910) ("What the board cannot do directly it cannot do indirectly."); *Wuepper and Wuepper*, 109 Or App 172, 176, 818 P2d 964 (1991) ("[T]he court cannot do indirectly what it cannot do directly.").

Whether the similar use determination is viewed in isolation or together with ZDO 106.01(B) (2018), they do

not excuse the failure of the hearings officer to exercise his own judgment to determine under ZDO 1203.03(A) that the proposed use is indeed a conditional use in the zoning district in which the property is located. The planning director's similar use determination did not preclude the hearings officer's determination of that issue. For that reason, we reject Willamette United's second and third arguments.

D. *Non-issue*

Finally, Willamette United urges that the similar use determination provided the hearings officer with insight about how the applicable ordinances should be interpreted. Willamette United argues that LUBA concluded that ORS 215.416(8) prohibited the hearings officer from considering the interpretation when he approved Willamette United's conditional use permit. We do not read LUBA's decision to prevent the hearings officer from giving the studied opinion of the planning director whatever consideration is due in reaching an independent decision on the conditional use permit. However, the appropriate weight to be given the planning director's interpretation is an issue that was not presented below, and we do not address it here.

## III.   CONCLUSION

We conclude that LUBA's order was not "unlawful in substance" and that LUBA did not err in remanding the conditional use decision.

Affirmed.