Argued and submitted September 25, reversed and remanded with instructions on
appeal; affirmed on cross-appeal November 8, 2000

## STATE ex rel Leslie N. MOORE,
*Respondent - Cross-Appellant,*

*v.*

## CITY OF FAIRVIEW,
*Appellant - Cross-Respondent.*

### (9805-03699; CA A106399)

13 P3d 1031

Steven G. Marks argued the cause and filed the briefs for appellant - cross-respondent.

Mark P. Reeve argued the cause for respondent - cross-appellant. With him on the brief was Reeve Kearns PC.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

## BREWER, J.

In this mandamus action, the City of Fairview (the city) appeals from the peremptory writ ordering it to return $13,345.88 that plaintiff-relator (plaintiff) paid "under protest" as a sewer and water connection fee for a residential subdivision. Plaintiff cross-appeals from the court's refusal to award him attorney fees. We reverse on the appeal and affirm on the cross-appeal.

The relevant facts are undisputed. In June 1997, the city approved plaintiff's application for approval of the preliminary subdivision plan and a related conditional use permit. The approval was subject to several conditions, including the payment of "water [and] sanitary sewer" fees and "condition c," which states that "a reimbursable[1] agreement with downstream developers (Silent Creek and Creekside) may be required, but is not yet available." The city's decision was not appealed to the Land Use Board of Appeals (LUBA).

The Silent Creek development to which condition c refers is a subdivision that is adjacent to and substantially larger than plaintiff's. It was approved by the city more than a year before the decision approving plaintiff's application, and sewer and water facilities capable of serving plaintiff's and a number of other developments were installed in the public right-of-way as part of the Silent Creek development. However, at the time that plaintiff's application was approved, the city had not yet adopted general legislation authorizing the establishment of "reimbursement districts," nor had it adopted specific legislation to provide for the reimbursement of Silent Creek. Such general and specific legislation were adopted by the city in July 1997 and March 1998 respectively.

Shortly after the city's adoption of the resolution creating the "Silent Creek reimbursement district," plaintiff was informed by city personnel that he would not be permitted to

---

[1] The term "reimbursable" in the condition was apparently meant to say—or is more commonly phrased as "reimbursement." A "reimbursement agreement" or a "reimbursement district" is a governmental device for providing developers whose utility facilities serve other developments, as well as their own, with compensation from the other developers that is proportionate to the benefits the latter enjoy.

make necessary sewer and water connections for his subdivision unless he paid the required amount to the reimbursement district.[2] Plaintiff paid the fee under protest and then brought this mandamus action. His *only* theory as to why the city has a mandatory duty that the courts may compel it to perform is that requiring him to pay the connection fees finalized after his subdivision was approved is a violation of ORS 92.040(2). That statute provides:

"After September 9, 1995, when a local government makes a decision on a land use application for a subdivision inside an urban growth boundary, only those local government laws implemented under an acknowledged comprehensive plan that are in effect at the time of application, shall govern subsequent construction on the property unless the applicant elects otherwise."

The trial court evidently agreed.[3] It granted plaintiff's motion for summary judgment and ordered the issuance of the peremptory writ.

The city makes several assignments of error, but its threshold contention is that the court lacked mandamus jurisdiction because plaintiff had a "plain, speedy, and adequate remedy" at law in the form of a writ of review or a declaratory judgment action. The city also contends that, by not appealing to LUBA from the decision approving his application and challenging condition c in that manner, plaintiff "waived his right to challenge the legality of [the] fees" in the present action. Although not styled as such, we think that the city's second contention presents a more basic jurisdictional problem than its first. The second contention gives rise to the question of whether the controversy is subject to LUBA's exclusive jurisdiction and cannot be brought in circuit court at all, while the first contention pertains only to the availability of mandamus relief as opposed to some other form of judicial remedy.

---

[2] Under the resolution, the city administered the district.

[3] In its opening brief, the city says that the trial court gave no explanation for its ruling. Plaintiff responds that the trial judge "*did* explain his ruling on the summary judgment motion, but because the ruling was not recorded, [plaintiff] will not summarize here the oral statements made by the court." (Emphasis plaintiff's.)

■     The parties do not appear to question—nor can it be seriously questioned—that the city's approval of plaintiff's subdivision was a "land use decision" that could have been appealed to LUBA pursuant to ORS 197.825. Given that fact, this case bears a marked similarity to *State ex rel J.C. Reeves Corp. v. City of Portland*, 131 Or App 578, 886 P2d 1095 (1994), *rev den* 320 Or 569 (1995). This court explained the facts there:

> "In 1991, the City of Portland granted the application of plaintiffs' predecessor in title for a planned unit development (PUD). The approval was made subject to a number of conditions, including condition H. The City's decision was not appealed to LUBA. In 1993, plaintiffs brought this mandamus action, seeking to compel the city to issue permits and in other ways implement the 1991 decision with condition H deleted from it. Plaintiffs contend that the underlying standards and criteria that the condition embodies were not in effect when the PUD application was submitted; therefore, plaintiffs reason, the city's imposition of the condition was contrary to ORS 227.178(3), which generally requires the approval or denial of permit applications to be based on standards and criteria that existed at the time of submission." *Id.* at 580.

In rejecting the plaintiff's argument that the case came within the narrow exceptions set forth in ORS 197.825(3)(a) to LUBA's exclusive jurisdiction over land use decisions, the court said:

> "[W]e have repeatedly held that circuit court jurisdiction under ORS 197.825(3)(a) is very limited in nature, and the clearest of the situations in which it does *not* arise is where the essence of the claim is that there was error in a land use decision that was or could have been reviewed through the LUBA process. *See City of Oregon City v. Mill-Maple Properties, Inc.*, 98 Or App 238, 779 P2d 172 (1989).

> "There is no doubt that the city's 1991 decision was appealable to LUBA or that, had it been appealed, any asserted error about condition H could have been reviewed. Plaintiffs argue that, notwithstanding that, condition H is void and invalid and that ORS 197.825(3)(a) is available as a means of 'enforcing' state and city land use laws by having

the invalidity of the condition declared. Plaintiff's argument depends on a radical—and maybe ingenious—misreading of our cases construing ORS 197.825(3)(a). We reiterate that recourse to circuit court under that statute is not permissible in order to obtain what amounts to a holding that a land use decision that was appealable to LUBA is erroneous. That is precisely the relief that plaintiffs seek here, and the trial court correctly held that it lacked jurisdiction to provide it." *Id.* at 580-81 (emphasis in original; footnote omitted).

The question that remains is whether there is anything about this case that calls for a different conclusion on the *exclusive* jurisdiction issue from the one we reached in *J.C. Reeves*. Although plaintiff does not respond to the issue in jurisdictional terms, he nevertheless makes two general points that arguably are relevant to the issue. He first asserts that condition c does not in fact require a payment of the kind that was later required, or is so vague that no one could have known at the time of its imposition (or by the time that a LUBA appeal had to be filed) that it later could be used as a means for requiring a payment to a reimbursement district that did not exist at the time of the approval of plaintiff's subdivision. Second, plaintiff argues, if the condition does mean what the city now maintains, it would be "unfair and illegal" and would violate ORS 92.040 by incorporating as yet nonexistent requirements into the approval decision itself. Plaintiff illustrates his points by asking, hypothetically, "suppose the City inserted a condition in every subdivision approval that stated 'the City may impose additional conditions on this development in the future, as they become available.'

Whatever the answer to plaintiff's hypothetical question might be, condition c bears little similarity to the condition that plaintiff hypothesizes. While condition c may be uncertain and open-ended in its specifics and subject to future contingencies in its application, it is clear enough to impart—at the least—that it contemplates some form of potential requirement that is to be reduced to specifics in the future and under which some form of reimbursement would be owed by plaintiff to the developers of Silent Creek. Every basis that plaintiff advances for challenging the condition here, including its putative invalidity and inconsistency with

ORS 92.040(2) as well as its vagueness and lack of specificity, could have been raised in a timely appeal to LUBA from the city's land use decision approving plaintiff's application.[4] As we have said on many previous occasions, errors in land use decisions and in the decision-making process are redressable exclusively through the LUBA appeal mechanism, *see Crist v. City of Beaverton*, 143 Or App 79, 83-84, 922 P2d 1253 (1996), and cases there cited, and correspondingly, "[t]here is no circuit court jurisdiction to render a decision on matters that were or could have been resolved through the local or LUBA process." *Doney v. Clatsop County*, 142 Or App 497, 502, 921 P2d 1346 (1996). This case falls squarely within those principles.

In *Doney*, the plaintiffs brought a mandamus action to compel the defendant county to grant them a road access permit to the area of their apartment development, which was in the planning area of and had been approved by the City of Seaside, but which also abutted a county road. The plaintiffs argued, and we agreed, that the issuance of the access permit was effectively a mandatory ministerial act in the aftermath of the city's land use decision approving the development, and we rejected the county's argument that the granting or denial of the access permit was a separate land use decision in itself. We explained, *inter alia*, that the county could have but did not participate in the city's proceedings approving the development or in an appeal to LUBA

---

[4] In response to the city's broader understanding of his arguments, plaintiff goes to some length to point out that he is not challenging either the subsequent enactment of the legislation authorizing reimbursement districts, the subsequent creation of the Silent Creek district, or the inclusion of his subdivision in the district. His challenge is aimed only at the imposition of the reimbursement district connection fees on his subdivision, the approval of which predated those events. However, the approval of his subdivision of course did not predate condition c, which was part of the approval decision itself. We do not imply an answer to whether condition c could validly establish a fee requirement that was contingent on the future events. The question that we *do* answer is whether plaintiff may raise that substantive issue in this action rather than through an appeal to LUBA from the subdivision approval decision.

We also do not understand plaintiff to argue that the city misapplied condition c in setting the fee, as distinct from lacking the authority to require *any* fee payment through condition c. If plaintiff were making such a contention, it might be arguable that a circuit court remedy would be available, but not in the form of a mandamus action. *See, e.g., Sch. Dist. No. 48, Wash. Co. v. Unified Sewerage*, 51 Or App 795, 627 P2d 485 (1981).

from the city's decision, and it could have raised questions regarding access in that forum. It did not do so. We said that, "The county's argument that its denial of the access permit was also a land use decision amounts to nothing more than a collateral attack on the city's decision." *Id.* at 503.

Plaintiff relies on *Doney* and understands it to stand for the proposition that

"the time to impose special access conditions, or the time to impose special sewer and water connection charges (*i.e.* reimbursement fees) is at the time of consideration of development approval. When a [local government] tries to impose such charges or impositions later, mandamus will lie to prevent them from doing so in violation of ORS 92.040(2)."

While the immediate target of plaintiff's comments about *Doney* is not the jurisdictional issue that we find decisive, the comments are virtually a mirror image of why plaintiff cannot surmount that decisive issue here. It is plaintiff's own actions, rather than the city's, that are untimely and misdirected. Having failed to pursue and prevail in an available land use appeal from the condition of approval that presaged the imposition of connection fees for the benefit of the reimbursement district, plaintiff may not now invoke the mandamus remedy to challenge the later events that implemented the condition that he did not challenge earlier.

■ The city also makes an argument—albeit also in connection with a different issue—that, if correct, would militate against our conclusion that plaintiff's exclusive remedy was an appeal to LUBA. Relying on *Housing Council v. City of Lake Oswego*, 48 Or App 525, 617 P2d 655 (1980), *rev dismissed* 291 Or 878 (1981), the city asserts that the reimbursement mechanism and the fee are fiscal measures and, as such, are not subject to review for compliance with the land use laws.[5] However, as we said in *City of Pendleton v. Kerns*, 56 Or App 818, 823, 643 P2d 658, *aff'd* 294 Or 126, 653 P2d 992 (1992):

---

[5] The city maintains that the fee therefore is not subject to ORS 92.040(2). We do not reach the merits of that aspect of the argument.

"The *Housing Council* rationale does not defeat LUBA's jurisdiction over decisions directly involving the use of land merely because the enabling ordinance happens to include a provision to finance the proposed improvement. If that were the case, a city could insulate any land use decision from LUBA's review merely by attaching a financing provision to the decision."

The situation here is decisively more similar to *Kerns* than *Housing Council*. Conditions relating to water and sewer services and requiring connections to facilities providing those services are quintessential to the regulation and approval of subdivisions. *See, e.g., Gisler v. Deschutes County*, 149 Or App 528, 945 P2d 1051 (1997). As in *Kerns*, the fact that the city's conditions regarding sewer and water services happen to include a "financing provision" in no way diminishes the conclusion that they and the decision embodying them were subject to LUBA's jurisdiction.

We hold that the trial court lacked jurisdiction over this action, and we reverse on the appeal. It follows from that holding that plaintiff was not the prevailing party and was accordingly not entitled to attorney fees under ORS 34.210. His cross-appeal therefore fails.

On appeal, reversed and remanded with instructions to dismiss action; affirmed on cross-appeal.