On respondents' motion to dismiss as moot filed August 4, and appellants' response filed August 14, 2020; motion to dismiss as moot denied, reversed and remanded April 6, 2022

GRIFFIN OAK PROPERTY INVESTMENTS, LLC;
Tai N. Dang; Hue P. Le; and Tue Nguyen,
*Plaintiffs-Respondents,*

*v.*

CITY OF ROCKAWAY BEACH, OREGON
and Terri Michel,
*Defendants-Appellants.*

Tillamook County Circuit Court
18CV36950; A169584

509 P3d 643

In this mandamus action under ORS 227.179, the circuit court entered a judgment requiring defendant City of Rockaway Beach (city) to approve relators' application for a zoning permit to rebuild a deck on their oceanfront home. The city appeals, contending that, contrary to the circuit court's ruling, the city showed that the approval would violate a substantive provision of the local comprehensive plan or land use regulations. That is so, the city contends, because the city showed that the approval would violate Rockaway Beach Zoning Ordinance (RBZO) section 5.060, which imposes a setback from the Oregon Coordinate Line established in ORS 390.770 on oceanfront dwellings. Here, the city contends, the setback is 60.6 feet. Relators' application seeks approval to rebuild the deck less than 60.6 feet from the Oregon Coordinate Line. *Held*: Given the circuit court's factual findings and the relevant provisions of the ordinance, the city planner correctly applied RBZO section 5.060 to relators' lot in 2008, when she concluded that the oceanshore setback was 30.3 feet. However, the city nevertheless showed that the approval of relators' current application would violate RBZO section 5.060 because the application sought permission to rebuild the deck closer to the ocean than allowed under the 30.3-foot setback. The circuit court erred in reasoning that the city's previous sign-off on relators' site plan and building inspection precluded it from asserting that approval of relators' separate application in this later proceeding would violate RBZO section 5.060.

Motion to dismiss as moot denied; reversed and remanded.

Jonathan R. Hill, Judge.

Janet M. Schroer argued the cause for appellants. Also on the briefs was Hart Wagner LLP.

Jonathan M. Radmacher argued the cause for respondents. Also on the brief was McEwen Gisvold LLP.

Before Egan, Presiding Judge, and Pagán, Judge, and DeHoog, Judge pro tempore.*

DeHOOG, J. pro tempore.

Motion to dismiss as moot denied; reversed and remanded.

_____

\* Pagán, J., *vice* DeVore, S. J.

**DeHOOG, J. pro tempore**

In this mandamus action under ORS 227.179, the circuit court entered a judgment requiring defendant, the City of Rockaway Beach (city), to approve relators' application for a zoning permit to rebuild a deck on their oceanfront home.[1] The city appeals, contending that, contrary to the circuit court's ruling, the city "show[ed] that the approval would violate a substantive provision of the local comprehensive plan or land use regulations." ORS 227.179(5). That is so, the city contends, because the city showed that the approval would violate Rockaway Beach Zoning Ordinance (RBZO) § 5.060, which imposes a setback from the Oregon Coordinate Line established in ORS 390.770 on oceanfront dwellings. Here, the city contends, the setback is 60.6 feet. Relators' application seeks approval to rebuild the deck less than 60.6 feet from the Oregon Coordinate Line.

As explained below, we conclude, contrary to the city's argument, that, given the circuit court's factual findings and the relevant provisions of the ordinance, the city planner correctly applied RBZO section 5.060 to relators' lot in 2008, when she concluded that the oceanshore setback was 30.3 feet. However, we agree with the city's alternative argument that it nevertheless showed that the approval of relators' current application would violate RBZO section 5.060 because the application sought permission to rebuild the deck closer to the ocean than allowed under the 30.3-foot setback. The circuit court erred in reasoning that the city's previous sign-off on relators' site plan and building inspection precluded it from asserting that approval of relators' separate application in this later proceeding would violate RBZO section 5.060. Given that conclusion, we need not address the city's third assignment of error, regarding attorneys' fees. We reject without discussion the city's second assignment of error, regarding issue preclusion, and relators' contention that this appeal is moot. We deny relators' motion to dismiss the appeal as moot. We reverse and remand.

---

[1] In a mandamus proceeding, the petitioning party is called the "relator," and the responding party is the "defendant." ORS 34.130. Here, in addition to the city, the petition also named the city manager of Rockaway Beach, Terri Michel, as a defendant in her official capacity. Our references to the city encompass Michel as well.

In a proceeding under ORS 227.179, we review legal conclusions for errors of law and findings of fact for any evidence. *State ex rel West Main Townhomes v. City of Medford*, 233 Or App 41, 43, 225 P3d 56 (2009), *adh'd to as modified on recons*, 234 Or App 343, 228 P3d 607 (2010).

We begin with the basic facts and procedural history. We state the facts in a manner consistent with the circuit court's findings. The subject property is a lot abutting the oceanshore within the City of Rockaway Beach. For a lot abutting the oceanshore, RBZO section 5.060(1)(b) requires an oceanshore setback measured eastward from the Oregon Coordinate Line, which is a statutorily defined line that marks the eastern edge of the oceanshore. ORS 390.770.

In 2008, relators applied for a permit to build a new home on the property. At that time, the city was enthusiastic about having a home built on the property. Surveyor Cook had recently prepared a survey of the property in consultation with then-city-planner Pearson; the circumstances surrounding the creation of that survey are discussed in more detail below.

Consulting the survey, Pearson determined that the oceanshore setback required by RBZO section 5.060 for relators' property was 30.3 feet from the Oregon Coordinate Line. Relators then submitted a site plan that showed only a 20-foot oceanshore setback. Despite a survey showing a requirement of a 30.3-foot oceanshore setback and a site plan showing only a 20-foot oceanshore setback, the city proceeded to approve the issuance of a building permit, and relators built their house and deck in approximately the location shown on the site plan. As built, the most oceanward point of the deck was 25.4 feet from the Oregon Coordinate Line. After construction was complete, the city signed off on an inspection card and sent a letter to relators indicating that all setbacks were correct.

In 2018, relators' deck was destabilized by wave action during a winter storm, and they applied for a permit to rebuild the deck. The first step of the permitting process was for the city to issue a zoning permit.[2] The city did not

---

[2] Under an agreement with Tillamook County, the city issues zoning permits as a preliminary step in the building-permit process, and the county, acting on behalf of the city, issues the building permits themselves.

issue a final decision on the application within 120 days, and relators filed this mandamus proceeding in circuit court, requesting the court to order the city to approve the application. *See* ORS 227.179(1) (with one exception not relevant here, "if the governing body of a city or its designee does not take final action on an application for a permit, limited land use decision or zone change within 120 days after the application is deemed complete, the applicant may file a petition for a writ of mandamus under ORS 34.130 in the circuit court of the county where the application was submitted to compel the governing body or its designee to issue the approval"). ORS 227.179 requires the court to issue a peremptory writ

> "unless the governing body or any intervenor shows that the approval would violate a substantive provision of the local comprehensive plan or land use regulations as those terms are defined in ORS 197.015. The writ may specify conditions of approval that would otherwise be allowed by the local comprehensive plan or land use regulations."

ORS 227.179(5).

The city contended that approval of relators' application would violate substantive provisions of the local comprehensive plan and land use regulations. First, the city contended that Pearson's 2008 determination of the oceanshore setback—as 30.3 feet—was incorrect both because of the facts and because her interpretation of RBZO section 5.060 was wrong. The city contended that, under a correct understanding of the facts and a correct interpretation of RBZO section 5.060, the oceanshore setback was 60.6 feet. Relators disagreed, and also contended that a variety of legal principles, which we discuss below in our analysis of the city's alternative argument, prevented the city from taking a position in this proceeding that was inconsistent with Pearson's 2008 application of RBZO section 5.060 to require a 30.3-foot setback.

Alternatively, the city contended that, even if the 30.3-foot ocean setback was appropriate, approval of relators' application would still violate RBZO section 5.060, because the application sought approval to rebuild the deck closer to

the ocean than allowed under the 30.3-foot setback.[3] Relators responded that Pearson could have reasonably interpreted the zoning ordinance to allow the house to be built where it was and, alternatively, that if the court concluded that the deck had to be rebuilt 30.3 feet from the Oregon Coordinate Line, the court could impose a condition to that effect on the application before ordering the city to approve it. Relators also contended that the city's issuance of the building permit based on a site plan showing a 20-foot oceanshore setback and its post-construction letter confirming that the setbacks were correct precluded it from enforcing the 30.3-foot setback in this later application to rebuild the deck.

The circuit court agreed with relators on nearly all of their arguments and entered a judgment in their favor and a peremptory writ ordering the city to approve the application without any conditions.

On appeal, the parties renew the arguments they made below. We begin by interpreting the city's ordinance. As we explain in more detail below, under the unique circumstances presented here, we interpret the ordinance as a matter of law. Thus, we follow the procedure established in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009): With the aim of discerning the intention of the enacting body, we consider the text of the ordinance in context. We may also consider its enactment history and, finally, if necessary to resolve any remaining ambiguity, maxims of interpretation. *Accord Central Oregon Landwatch v. Deschutes County*, 315 Or App 673, 677, 501 P3d 1121 (2021) ("Where, as here, there is not a county interpretation to which we must defer, we construe local ordinances, including comprehensive plans, using the familiar framework set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993) and [*Gaines*]. We attempt to determine the meaning most likely intended by the enacting body[.]").

---

[3] The city also argued that, to the extent that relators' house was built closer to the ocean than allowed under the setback, it was not covered by any Goal 18 exception and, consequently, violated the city's comprehensive plan, and that the Goal 18 exception for the property was limited to the footprint of two structures that were removed from the property before relators bought it. Given our conclusion that the city showed that the development applied for violated RBZO section 5.060, we do not consider those contentions.

We first consider the correctness of Pearson's 2008 conclusion that the oceanshore setback was 30.3 feet. The city contends that that conclusion was wrong and that, because this is a statutory mandamus action, we should not defer to Pearson's, or the city's, interpretation of the ordinance. *See State ex rel Coastal Management v. Washington Cty.*, 159 Or App 533, 537-42, 979 P2d 300 (1999) (in the context of 120-day mandamus actions, we interpret ordinances as a matter of law, without deference to any interpretation by the local government). We need not decide whether we should defer to Pearson's interpretation of the ordinance because, even interpreting the ordinance independently, we conclude that Pearson's interpretation of the ordinance was correct.

Because the first dispute that we address is whether Pearson's 2008 determination of the oceanshore setback was correct when it was made, we set out the relevant provisions of the RBZO as they existed in 2008. The oceanshore setback is established in RBZO section 5.060, entitled "General Exceptions to Yard Requirements." The provision states:

"For all lots abutting the oceanshore, any yard abutting the oceanshore shall have a depth that is the average depth of all existing yards abutting the oceanshore for a distance of 200 feet in either direction from the parcel's property lines.

"The average setback shall be measured from the Oregon Coordinate Line. In measuring structures, the most oceanward point of a structure which is higher than 36 inches above the existing grade shall be used."

RBZO § 5.060(1)(b).

RBZO section 1.030 provides definitions for the zoning ordinance:

"As used in this ordinance the following words and phrases shall mean:

"* * * * *

"(61) Structure. Something constructed or built, or any piece of work artificially built up or composed of parts joined together in some definite manner.

"*****

"(66) Yard. An open space on a lot which is unobstructed from the ground upward except as otherwise provided in this ordinance.[4]

"(67) Yard, Front. A yard between side lot lines and measured horizontally at right angles to the front lot line from the front lot line to the nearest point of a building or other structure. Any yard meeting this definition and abutting a street shall be considered a front yard.

"(68) Yard, Rear. A yard between side lot lines and measured horizontally at right angles to the rear lot line to the nearest point of a building or other structure.

"(69) Yard, Side. A yard between the front and rear yard measured horizontally and at right angles from the side lot line to the nearest point of a building or other structure."

Thus, under RBZO section 5.060(1)(b), the oceanshore setback is established by reference to the "yard abutting the oceanshore." To determine the required oceanshore setback for a given parcel, one must take the average of the depth of "all existing yards abutting the oceanshore for a distance of 200 feet in either direction from the parcel's property lines," and use the resulting number of feet as the oceanshore setback for the parcel. RBZO § 5.060(1)(b). The "yard" is "an open space on a lot which is unobstructed from the ground upward," RBZO § 1.030(66), and it is measured from the Oregon Coordinate Line to "the most oceanward point of a structure which is higher than 36 inches above the existing grade."[5] RBZO § 5.060(1)(b); *see also* RBZO § 1.030(67)-(69) (yards are measured from a surveyed line "to the nearest point of a building or other structure").

---

[4] RBZO section 5.040 provides certain exceptions for obstructions in yards: "Projections from Buildings. Architectural features such as cornices, eaves, canopies, sunshades, gutters, chimneys, and flues shall not project more than 24 inches into a required yard, except that unsupported eaves may extend up to half the distance of a required setback."

[5] It is ambiguous whether the measurement is to the most oceanward point of a structure any part of which is higher than 36 inches above the existing grade or to the most oceanward point at which a structure is higher than 36 inches above the existing grade. We need not resolve that ambiguity because, given the facts found by the circuit court, it has no effect on the correctness of Pearson's 2008 determination.

As we understand their positions, the parties generally agree on that understanding of RBZO section 5.060. They disagree, however, about the meaning of "structure." That meaning matters here because, as explained below, under Pearson's understanding of the meaning of "structure," which is defended by relators in this litigation, there were two "yards abutting the oceanshore" within 200 feet of the side lot lines of relators' parcel, one 60.6 feet deep and one zero feet deep, yielding an average depth of 30.3 feet. Under the city's current understanding of the meaning of "structure," however, there was only one "yard[] abutting the oceanshore" within 200 feet of the side lot lines of relators' parcel, and it was 60.6 feet deep and thus yielded an average of 60.6 feet.

Relators point to the general definitions in RBZO section 1.030, where, as set out above, "structure" is defined as "something constructed or built, or any piece of work artificially built up or composed of parts joined together in some definite manner." RBZO § 1.030(61). The city, for its part, contends that the correct definition of structure is the one that appears in the definitions set out for the flood hazard overlay zone, RBZO § 3.093(16): "A walled and roofed building including a gas or liquid storage tank that is principally above ground." Relators' property is in the flood hazard overlay zone. One of the "structures" that Pearson relied on when calculating the oceanshore setback was a retaining wall, which is "something constructed or built," RBZO § 1.030(61), but is not "[a] walled and roofed building," RBZO § 3.093(16).

We agree with Pearson's 2008 understanding, which relators defend, that the general definition of "structure" in RBZO section 1.030(61) controls. As set out above, RBZO section 1.030 sets out definitions for the zoning ordinance as a whole, explaining that, "[a]s used in this ordinance," the definitions establish what "the following words and phrases shall mean." The only plausible meaning for "this ordinance" in RBZO section 1.030 is the zoning ordinance as a whole; Article I, in which it appears, is entitled "Introductory Provisions" and contains only the title ("This ordinance shall be known as the Rockaway Beach Zoning Ordinance," RBZO § 1.010), purpose, and definitions. Thus, for all the

provisions of the ordinance, the default definition of "structure" is "something constructed or built, or any piece of work artificially built up or composed of parts joined together in some definite manner." RBZO § 1.030(61).

The definition of "structure" in RBZO section 3.093(16) ("A walled and roofed building including a gas or liquid storage tank that is principally above ground.") displaces that default definition for purposes of the provisions of the flood hazard overlay zone, RBZO §§ 3.093-3.097. RBZO section 2.020, entitled "Classification of Zones," provides, "Some areas within the city are also hereby included in one or more of the following overlay districts, each of which has *special provisions* that, along with the provisions of the basic zoning district, govern the use of property." (Emphasis added.) One of those overlay districts is the flood hazard overlay zone, which is addressed in RBZO sections 3.092 to 3.097.

The provisions of RBZO section 3.093 provide definitions specific to the flood hazard overlay zone provisions of RBZO sections 3.092 to 3.097, that is, the "*special provisions* that, along with the provisions of the basic zoning district, govern the use of property" in the flood hazard overlay zone. RBZO § 2.020 (emphasis added). The oceanshore setback established in RBZO section 5.060 is not one of the special flood hazard overlay provisions. As noted, the flood hazard provisions are RBZO sections 3.092 to 3.097. Because RBZO section 5.060 is not among those special flood hazard provisions, the term "structure" in RBZO section 5.060 has the meaning given in the default definition of the term in RBZO section 1.030(61): A "structure" is "something constructed or built, or any piece of work artificially built up or composed of parts joined together in some definite manner."

That is true notwithstanding that relators' property is located in the flood hazard overlay zone. The property's location in that zone means that, in addition to meeting the other requirements of the ordinance, development on relators' property must satisfy the requirements of the flood hazard overlay zone provisions, RBZO §§ 3.093-3.097. When the term "structure" appears in the flood hazard provisions, it means "A walled and roofed building including a gas or liquid storage tank that is principally above ground." RBZO

§ 3.093(16). But RBZO section 5.060 is not one of the flood hazard provisions, and, thus, that definition does not apply.

Accordingly, under RBZO section 5.060(1)(b), the oceanshore setback for a lot is calculated by taking "the average depth of all existing yards abutting the oceanshore for a distance of 200 feet in either direction from the parcel's property lines." The depth of each yard abutting the oceanshore is the distance from the Oregon Coordinate Line across unobstructed open space to the most oceanward point of a structure—"something constructed or built, or any piece of work artificially built up or composed of parts joined together in some definite manner," RBZO § 1.030(61)—which is higher than 36 inches above the existing grade.

With that understanding of RBZO section 5.060, we turn to the facts relevant to the 2008 determination of the oceanshore setback for relators' parcel. The parties do not appear to disagree that there was one relevant yard to the south of relators' parcel, and that that yard was 60.6 feet deep. Rather, their dispute centers on the parcel to the north of relators' parcel.

In 2005, for a previous owner of relators' parcel, Cook surveyed the parcel and indicated an oceanshore setback of 30.3 feet. To the south of relators' parcel, the survey identifies a structure from which the yard was measured. To the north of the parcel, the survey uses "0.0" for the yard depth and does not identify any structure from which the yard was measured. Cook testified that he had used the yard depth of zero following Pearson's instructions, and that there was no structure on the parcel to the north of relators' parcel.

By contrast, Pearson testified that in fact there was a structure on the parcel to the north of relators' parcel, specifically, a retaining wall. She had observed the wall and indicated that it was 36" tall.[6] Relators introduced a sketch of the wall that showed it on the Oregon Coordinate Line and just to the west of the line, an engineering report

---

[6] The city does not argue on appeal that the court erred in reasoning that a retaining wall that supports the grade of a parcel but does not extend above the grade it creates can be "higher than 36 inches above the existing grade." RBZO § 5.060(1)(b). Accordingly, we do not consider that question.

describing the wall, and a photograph showing the wall. The engineering report noted "the presence of an existing shoreline protective structure [to the north of relators' parcel]. The structure consists of a berm of pit dash run basaltic rock west of the subject property. Several dozen feet to the north, the structure includes a wood piling-and-plank wall, which is periodically exposed by storms and covered by dunes."

Relying on Pearson's testimony and the engineering report, the circuit court found that there was a retaining wall that qualified as a structure—as explained above, "something constructed or built, or any piece of work artificially built up or composed of parts joined together in some definite manner," RBZO § 1.030(61)—to the north of relators' parcel, and that it was on the Oregon Coordinate Line. Thus, the relevant yard depth was zero feet. Given those findings, the calculation of the oceanshore setback as 30.3 feet—the average of the 60.6-foot yard to the south and the zero-foot yard to the north—was correct.

We next consider the city's alternative argument, which, as explained above, is that the applied-for development violated RBZO section 5.060 because the application sought approval to rebuild the deck closer to the ocean than was allowed under the 30.3-foot setback.[7]

As noted above, the survey showed the oceanshore setback as 30.3 feet. Thereafter, relators submitted a site plan for the house that showed the oceanshore setback as 20 feet and showed the deck closer to the Oregon Coordinate Line than 30.3 feet. Based on both the survey, which showed a 30.3-foot oceanshore setback, and the site plan showing a 20-foot oceanshore setback, the city issued a building permit, and relators built their house and deck in approximately the location shown on the site plan. As built, the most oceanward edge of the deck was 25.4 feet from the Oregon Coordinate Line. At the end of construction, city personnel

---

[7] The city's arguments are confined to the 2008 version of the RBZO; that is, the city does not contend that it could recalculate the appropriate oceanshore setback based on the provisions of the RBZO that were in effect when relators applied to rebuild the deck. Thus, although the RBZO definition of "structure" has changed, we consider only the 2008 version of the RBZO.

visited the site and sent a letter to relators indicating that "the structure meets current required setbacks" and that "[a]ll setbacks were verified in the field and noted on the enclosed site plan." The "enclosed site plan" is a copy of the site plan showing the oceanshore setback 20 feet from the Oregon Coordinate Line.

Construction was completed, and the letter was sent, in 2009. As noted above, in the application at issue in this proceeding, which was submitted in 2018, relators sought approval to rebuild the deck in its original location. The city contends that approval of the application would violate RBZO section 5.060 because, even if—as we have concluded— the correct oceanshore setback under that provision is 30.3 feet, the deck was built with a lesser setback of 25.4 feet. Relators raise a variety of arguments in response. First, they respond that, for several reasons, the 25.4-foot setback was correct in 2008 under the ordinance. As explained below, we disagree.

As we understand it, relators contend again here that we should defer to Pearson's apparent interpretation of the ordinance to allow the house and deck to be built 25.4 feet from the Oregon Coordinate Line, and the city contends again that, in this 120-day mandamus context, we should not defer. As explained below, however, we conclude that no plausible interpretation of the ordinance would have allowed the house and deck to be built where they were. Thus, again, we need not, and do not, decide whether we should defer to the 2008 interpretation of the ordinance.

Relators supply three reasons why, in their view, the 2008 ordinance could plausibly be interpreted to allow the house and deck to be built where they were notwithstanding that the required oceanshore setback was 30.3 feet. The first and third reasons overlap; accordingly, we consider them together. Relators contend that the yard abutting the oceanshore could have been measured from the foundation of the house, not from the deck. They also contend that the deck might not have been 36 inches above "the base flood elevation." Consequently, they contend, the oceanshore setback did not have to be measured from the most oceanward point of the deck.

As explained above, for purposes of RBZO section 5.060(1)(b), "structure" means "something constructed or built, or any piece of work artificially built up or composed of parts joined together in some definite manner." RBZO § 1.030(61).[8] Under that definition of "structure," the deck is part of the same structure as the house, because it is one of the parts of the house "joined together in some definite manner."[9] RBZO § 1.030(61).

As set out above, the "yard abutting the ocean-shore" is measured from the Oregon Coordinate Line to "the most oceanward point of a structure which is higher than 36 inches above the existing grade." RBZO § 5.060(1)(b). We have just explained that the deck is part of the structure of the house; thus, the yard must be measured to the most oceanward point of the deck unless, at that point, the deck is not "higher than 36 inches above the existing grade."[10] RBZO § 5.060(1)(b).

As noted above, relators contend that the deck may not have been 36 inches above "the base flood elevation." However, that possibility is immaterial to the relevant measurement under RBZO section 5.060(1)(b)—the height of the deck, and its railing, above "the existing grade." Relators do not contend that the deck was not 36 inches higher than

---

[8] To any extent to which relators contend that the city could have applied the broad definition of "structure" from RBZO section 1.030(61) to determine the depth of ocean yards on other lots and the more limited definition of "structure" from RBZO section 3.093(16) to determine the depth of the ocean yard on relators' property, we reject that interpretation of RBZO section 5.060(1)(b) as implausible.

[9] Moreover, the deck cannot be part of the "yard," because the space containing the deck is not "unobstructed from the ground upward." RBZO § 1.030(66). We doubt that a deck could plausibly be included in the exception for obstructions in yards set out in RBZO section 5.040: "Projections from Buildings. Architectural features such as cornices, eaves, canopies, sunshades, gutters, chimneys, and flues shall not project more than 24 inches into a required yard, except that unsupported eaves may extend up to half the distance of a required set back." Even if that provision could be understood to include a deck as an architectural feature projecting from a building, however, it would limit the deck's projection into the yard to 24 inches and, consequently, would not authorize the deck at issue here, which extended significantly further into the yard.

[10] Again, we note that it is not clear whether the measurement is from the most oceanward point of the structure that is 36 inches high or from the most oceanward point of a structure if any part of that structure is 36 inches tall. Here, we assume the ordinance has the former meaning, which supports relators' position better than the latter meaning.

the existing grade, nor would the record support such an argument. Thus, the yard abutting the oceanshore had to be measured from the Oregon Coordinate Line to the most oceanward point of the deck. As noted, that distance was 25.4 feet, not the required 30.3 feet.

Relators also contend that the base-zone setback provision set out in RBZO section 3.030(3)(g)—which allows a rear yard depth of 20 feet—could be understood to supersede the oceanfront setback requirement of RBZO § 5.060. However, the text of RBZO section 3.030(3)(g) expressly forecloses that possibility, stating, "Oceanfront structures shall conform to section 5.060(1)(b)."

In sum, under any plausible interpretation of the ordinance, the most oceanward point of the deck had to be 30.3 feet from the Oregon Coordinate Line. Thus, the city is correct that approval of relators' application to rebuild the deck 25.4 feet from the Oregon Coordinate Line would violate RBZO § 5.060.

The circuit court reasoned, and relators contend on appeal, that, even if that were the case, the city was precluded from withholding approval of relators' application because it had previously approved construction of the deck 25.4 feet from the Oregon Coordinate Line by approving the site plan with a 20-foot setback and by informing relators, after construction, that the house complied with all setbacks. As we understand its letter opinion, the court relied on three theories to reach that conclusion: First, it relied on the goalpost statute, ORS 215.427(3)(a); second, it relied on its view of a land-use-specific principle of preclusion that we articulated in *Doney v. Clatsop County*, 142 Or App 497, 921 P2d 1346 (1996); and, third, it reasoned that the deck, as built, was a nonconforming use that could be continued or replaced. At trial, relators also relied on a general estoppel principle, but the court did not expressly adopt that theory in its letter opinion.

As explained below, we conclude that, under these circumstances, none of those principles precluded the city from denying relators' application to rebuild the deck less than 30.3 feet from the Oregon Coordinate Line. First, the circuit court's reliance on the goalpost statute was

misplaced. ORS 227.178 generally provides time limits and other procedures for an "application for a permit, limited land use decision or zone change." ORS 227.178(1), (2). The goalpost provision, ORS 227.178(3)(a), states:

> "If the application was complete when first submitted or the applicant submits the requested additional information within 180 days of the date the application was first submitted and the city has a comprehensive plan and land use regulations acknowledged under ORS 197.251, approval or denial of the application shall be based upon the standards and criteria that were applicable at the time the application was first submitted."

When its requirements are met, that provision fixes the goalposts—the standards and criteria that the local government uses to approve or deny an application—for "the application," that is, a single application. ORS 227.178(3)(a); *see also, e.g.*, *Holland v. City of Cannon Beach*, 154 Or App 450, 452 n 1, 962 P2d 701, *rev den*, 328 Or 115 (1998) (noting that the goalpost statute required the city to apply on remand the same standards and criteria that applied in the original proceedings where the proceedings on remand were designated by statute as a continuation of the proceedings on the original application). In this case, relators' application to rebuild the deck was distinct from their initial application for a new dwelling and was submitted 10 years later. By its terms, the goalpost statute does not apply.

Nor does our holding in *Doney* preclude the city from applying its ordinance here. In that case, a city had approved a housing development on land owned by the plaintiffs. 142 Or App at 499. The development required access to a county road, and the plaintiffs were entitled by statute to "reasonable access to public roads." *Id.* at 500 (internal quotation marks omitted). We explained that the plaintiffs had "satisfied every conceivable standard for issuance of an access permit under a statute that the county acknowledges *usually* is administered in a nondiscretionary way and subsection (3) of which prohibits the county from administering [the statute] 'so as to deny any property adjoining the road or highway reasonable access.'" *Id.* at 504 (emphasis in original). However, the county nevertheless refused to allow the road access, contending that, based on contracts between

the county and the city and the plaintiffs' predecessor in interest, it did not have to allow access to the county road from the plaintiffs' property. *Id.*

The plaintiffs brought a mandamus proceeding to compel the county to issue the road access permit, and the county argued that LUBA, rather than the circuit court, had jurisdiction. We disagreed, holding that, under the circumstances, the county's denial of the road-access permit was not a land use decision appealable to LUBA.[11]

In *Doney*, we held that, under the circumstances presented there, the road-access action was "ancillary" to the city's original approval of the housing development and, consequently, that, having failed to raise the contract issues in the city proceeding, the county was precluded from relying on them in the road-access action:

> "The city and LUBA, had its review been sought, had exclusive jurisdiction in the development application proceedings over the matters that were or could have been decided there. Those are the matters that the county contends were open to reconsideration by it and relitigation before LUBA in conjunction with its later action on the access permit. *Beck v. City of Tillamook*, 313 Or 148, 831 P2d 678 (1992), and *Mill Creek Glen Protection Assoc. v. Umatilla Co.*, 88 Or App 522, 746 P2d 728 (1987) [(*Mill Creek Glen*)], are among the authorities that make it clear that the county may not have a second bite at the apple. The city's decision was conclusive as to all of the matters that the county contends converted its denial of the access permit from a ministerial act into a land use decision. The only land use decision that is relevant to this case was the

---

[11] Apart from articulating the preclusion principle that we discuss in the text, in *Doney*, we also held that, "if local or LUBA jurisdiction exists or has been exercised, there is no circuit court jurisdiction [under ORS 197.825] to render a decision on matters that were or could have been resolved through the local or LUBA process." 142 Or App at 502. A concurring opinion in *Rogue Advocates v. Board of Comm. of Jackson County*, expressed disapproval of that holding. 362 Or 269, 279, 407 P3d 795 (2017) (Walters, J., concurring) (explaining that "the proper question for the circuit court and the Court of Appeals was not whether 'local or LUBA jurisdiction exists or has been exercised,' but rather *** whether the thrust of Rogue Advocates' complaint was to obtain enforcement of the county's land use ordinances that prohibited [the challenged land use] without the permits and approvals required to lawfully engage in that operation" (internal quotation marks omitted)).

The jurisdiction principle from *Doney* is not at issue in this case.

city's approval of plaintiffs' development, and the county's argument that its denial of the access permit was also a land use decision amounts to nothing more than a collateral attack on the city's decision."

*Id*.

Thus, our holding regarding preclusion in *Doney* relied on *Beck* and *Mill Creek Glen*, cases that establish that "issues that LUBA decided in earlier proceedings, and upon which judicial review was not sought, are not subject to review in a judicial review of a subsequent LUBA order." *Gould v. Deschutes County*, 272 Or App 666, 684, 362 P3d 679 (2015) (describing the Supreme Court's holding in *Beck*); *see also Mill Creek Glen*, 88 Or App at 526-27 (articulating a principle similar to the one later approved by the Supreme Court in *Beck*). That principle depends, in part, on the fact that a subsequent LUBA appeal is, by statute, part of the same proceeding as the original appeal. *Beck*, 313 Or at 152-53 (considering ORS 197.763, which addresses "reopen[ing] a record" after a remand from LUBA); *see also Kleikamp v. Board of Commissioners*, 301 Or App 275, 295, 455 P3d 546 (2019) (noting that "the court's holding in *Beck*, and all of its reasoning, was specific to LUBA and based on the statutes governing LUBA's review of land use decisions" and holding that the principle from *Beck* does not apply in other proceedings, even if they are related to land use). We have also recognized that the waiver principle articulated in *Beck* is a variation on the law of the case doctrine, which, likewise, addresses situations in which "a ruling or decision has been once made in a particular case by an appellate court" and makes the holding "binding and conclusive both upon the inferior court in any further steps or proceedings in the same litigation and upon the appellate court itself in any subsequent appeal or other proceeding for review." *Gould*, 272 Or App at 685 (internal quotation marks omitted).

In *Doney*, we did not explain what it means for a proceeding or decision to be "ancillary" to a land use decision already made. However, in a subsequent case, we have applied that preclusion principle in a situation, like the one in *Doney*, where a land use decision authorizes a project and a second decision is required to implement, in the

first instance, the earlier approval. *See State ex rel Moore v. City of Fairview*, 170 Or App 771, 778, 13 P3d 1031 (2000), *rev den*, 331 Or 692 (2001) ("Having failed to pursue and prevail in an available land use appeal from the condition of approval that presaged the imposition of connection fees for the benefit of the reimbursement district, plaintiff may not now invoke the mandamus remedy to challenge the later events that implemented the condition that he did not challenge earlier."); *cf. also Holman v. City of Warrenton*, 242 F Supp 2d 804-05 (D Or 2002) (because "the Planning Commission determined the project met all zoning and land use requirements when it approved Plaintiff's application for a conditional use permit" and that decision became final, "the City was precluded from reexamining the zoning issue when Plaintiff filed his application for a building permit that complied with his conditional use permit").

We have never applied the preclusion principle from *Doney* in a situation, like this one, involving a distinct application for a new land use decision or limited land use decision that is filed long after the originally approved project is complete. The preclusion principle articulated in *Beck* does not apply here, because, unlike the LUBA remand at issue there, the new decision here is not a continuation of the proceedings on the original application. Nor does this situation involve a decision, like the one in *Doney*, that is "ancillary" to an initial decision: In *Doney* and the cases following it, the initial land use decisions at issue authorized projects and the second decisions were required to implement, in the first instance, the earlier approvals. Regardless of whether we were correct in *Doney* to extend the preclusion principle established in *Beck* that far, even that extension does not encompass relators' circumstances; here, a new application for a new land use decision or limited land use decision was filed years after the first project was completed. Under *Doney*, the city's decision in 2008 to permit the original deck does not preclude it from evaluating, in 2018, whether an application to rebuild the deck complies with the RBZO.

Nor is the house or deck a nonconforming use. RBZO section 7.010 provides, "Subject to the provisions of ORS 215.130 and subsequent provisions of this article, a

nonconforming use or structure may be continued." ORS 215.130(5) provides, "The lawful use of any building, structure or land at the time of the enactment or amendment of any zoning ordinance or regulation may be continued."[12] We have explained that that "statute describes an exception to the application of zoning ordinances for a use that is inconsistent with zoning but that was lawfully in existence before the enactment or amendment of the ordinance." *Deschutes County v. Pink Pit, LLC*, 306 Or App 563, 573, 475 P3d 910 (2020); *see also Morgan v. Jackson County*, 290 Or App 111, 117, 414 P3d 917, *rev den*, 362 Or 860 (2018) ("lawful use of any building, structure or land" as used in ORS 215.130(5) refers to "the lawfulness of the use under nonexistent or less restrictive zoning or land use regulations"). Here, it was not the "enactment or amendment" of any zoning ordinance or regulation that made the deck's location unlawful; its location was unlawful under the version of the ordinance that was in effect in 2008, when the deck was first approved, as well as under later versions of the ordinance, because the structure was built within the 30.3-foot oceanshore setback required by RBZO section 5.060.[13]

Finally, we consider relators' argument, raised in the circuit court, and renewed on appeal, that the city is estopped from taking a position inconsistent with its approval of the deck's location. *Bankus v. City of Brookings*, 252 Or 257, 449 P2d 646 (1969), demonstrates that estoppel does not apply here. In that case, the plaintiff sought to dig a ditch about 2,000 feet long along a city street. City ordinance required a deposit of $2 per foot of ditch before a permit would be issued; the city superintendent of streets was the issuing authority. *Id.* at 258. The plaintiff paid a deposit of $500 and received a permit from the city recorder. After he began

---

[12] We have held that ORS 215.130 applies directly only to counties, not to cities. *City of Mosier v. Hood River Sand*, 206 Or App 292, 306-10, 136 P3d 1160 (2006). Thus, the statute does not supersede a city ordinance that is inconsistent with it. *Id.* at 306, 310. In this case, because RBZO section 7.010 incorporates "the provisions of ORS 215.130," its scope is consistent with the scope of the statute.

[13] We reject without discussion relators' contention that RBZO section 7.050 is relevant here; that provision addresses structures "for which a building permit has been issued and construction work has commenced prior to the adoption of this ordinance." We also note that, in this case, relators advance no arguments based on common-law vested rights or any constitutional provisions.

digging the ditch, the city ordered the work stopped until the plaintiff paid the correct deposit and obtained a permit from the superintendent. *Id.* at 259.

The plaintiff contended, among other things, that the city was estopped from reneging on the permit that had been issued. The Supreme Court held that it was not. *Id.* The court explained that it was "unnecessary to decide if the recorder [(rather than the superintendent)] could issue a valid permit." *Id.* That was so because, "when [an] official is acting within a general grant of authority, the authorities are uniform that the mandatory requirements of an ordinance specifically stated cannot be waived," "[n]or may a city be estopped by the acts of a city official who purports to waive the provisions of a mandatory ordinance * * *." *Id.* at 259-60; *see also, e.g.*, *City of Mosier v. Hood River Sand*, 206 Or App 292, 319, 136 P3d 1160 (2006) ("[A] city cannot be estopped by the acts of a city official who purports to waive the provisions of a mandatory ordinance" because "'[r]eliance on a misstatement is not reasonable if the governmental actor had no authority to make the misstatement.'" (Quoting *Kucera v. Bradbury*, 337 Or 384, 407, 97 P3d 1191 (2004).)).

Here, as explained above, the ordinance required an oceanshore setback of 30.3 feet. Neither Pearson nor any other city official could bind the city to a smaller setback by incorrectly approving the site plan showing an oceanshore setback of 20 feet.

Thus, we conclude that the court erred in ordering the city to approve relators' application, because the applied-for development did not comply with the 30.3-foot oceanshore setback required by RBZO section 5.060. The parties dispute whether the court could permissibly have ordered the city to approve the application with the condition that the deck comply with the 30.3-foot oceanshore setback. We leave it to the circuit court to decide that question in the first instance on remand.

Motion to dismiss as moot denied; reversed and remanded.